1

2

3

4

5

6

7

8

9           UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11

JASON JACQUES GODWIN,                    1:12-CV-00317 AWI GSA HC

12
                        Petitioner,
13                                         FINDINGS AND RECOMMENDATION
        v.                                 REGARDING RESPONDENT'S MOTION
14                                         TO DISMISS

15   G. LEWIS, Warden,                     [Doc. #11]

16                       Respondent.
     _____/
17

18          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254.

20                              **BACKGROUND**

21          Petitioner is currently in the custody of the California Department of Corrections pursuant to

22   a judgment of the Superior Court of California, County of Kern, following his conviction by plea of

23   guilty on January 4, 2010, to four counts of battery by a prisoner and one count of resisting arrest.

24   See Lodged Doc. No. 1.[1]  Id.  On February 1, 2010, Petitioner was sentenced to serve a determinate

25   term of 9 years in state prison. Id.  Petitioner did not appeal the conviction.

26          Petitioner filed three post-conviction collateral challenges with respect to the judgment in the

27
     _____
28          [1]"Lodged Doc." refers to the documents lodged by Respondent in support of the motion to dismiss.

1  state courts, all petitions for writ of habeas corpus, as follows:

2       1.   <u>Kern County Superior Court</u>
             Filed: April 17, 2011[2];
3            Denied: June 14, 2011;

4       2.   <u>California Court of Appeals, Fifth Appellate District</u>
             Filed: June 20, 2011;
5            Denied: July 14, 2011;

6       3.   <u>California Supreme Court</u>
             Filed: July 25, 2011;
7            Denied: December 14, 2011.

8  <u>See</u> Lodged Docs. Nos. 2-7.

9       On February 26, 2012, Petitioner filed the instant federal petition for writ of habeas corpus in

10  this Court. On May 25, 2012, Respondent filed a motion to dismiss the petition as being filed outside

11  the one-year limitations period prescribed by 28 U.S.C. § 2244(d)(1).  On June 18, 2012, Petitioner

12  filed an opposition to Respondent's motion to dismiss.  Respondent filed a reply on July 25, 2012.

13                              **DISCUSSION**

14  A.  Procedural Grounds for Motion to Dismiss

15       Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a

16  petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not

17  entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

18       The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if

19  the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the

20  state's procedural rules. <u>See</u>, <u>e.g.</u>, <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule

21  4 to evaluate motion to dismiss petition for failure to exhaust state remedies); <u>White v. Lewis</u>, 874

22  F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for

23  state procedural default); <u>Hillery v. Pulley</u>, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).

24  Thus, a respondent can file a motion to dismiss after the court orders a response, and the Court

25  should use Rule 4 standards to review the motion.  <u>See Hillery</u>, 533 F. Supp. at 1194 & n. 12.

26  _____

27       [2]Pursuant to the mailbox rule, the Court deems the various petitions filed on the date they were signed and
    presumably handed to prison authorities for mailing. <u>Houston v. Lack</u>, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385 (1988);
28  <u>Huizar v. Carey</u>, 273 F.3d 1220, 1222 (9th Cir. 2001).

1    In this case, Respondent's motion to dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s

2    one-year limitations period.  Because Respondent's motion to dismiss is similar in procedural

3    standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default

4    and Respondent has not yet filed a formal answer, the Court will review Respondent's motion to

5    dismiss pursuant to its authority under Rule 4.

6    B.  Limitation Period for Filing a Petition for Writ of Habeas Corpus

7    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

8    1996 (hereinafter "AEDPA").  The AEDPA imposes various requirements on all petitions for writ of

9    habeas corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059,

10   2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), cert. denied, 118 S.Ct.

11   586 (1997).

12   In this case, the petition was filed on February 26, 2012, and therefore, it is subject to the

13   provisions of the AEDPA.  The AEDPA imposes a one-year period of limitation on petitioners

14   seeking to file a federal petition for writ of  habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended,

15   § 2244, subdivision (d) reads:

16        (1)  A 1-year period of limitation shall apply to an application for a writ of habeas
          corpus by a person in custody pursuant to the judgment of a State court.  The
17        limitation period shall run from the latest of –

18            (A) the date on which the judgment became final by the conclusion of direct
          review or the expiration of the time for seeking such review;
19
              (B) the date on which the impediment to filing an application created by
20        State action in violation of the Constitution or laws of the United States is removed, if
          the applicant was prevented from filing by such State action;
21
              (C) the date on which the constitutional right asserted was initially recognized by
22        the Supreme Court, if the right has been newly recognized by the Supreme Court and made
          retroactively applicable to cases on collateral review; or
23
              (D) the date on which the factual predicate of the claim or claims presented
24        could have been discovered through the exercise of due diligence.

25        (2) The time during which a properly filed application for State post-conviction or
          other collateral review with respect to the pertinent judgment or claim is pending shall
26        not be counted toward any period of limitation under this subsection.

27   28 U.S.C. § 2244(d).

28   In most cases, the limitations period begins running on the date that the petitioner's direct

1   review became final. Here, judgment was rendered on February 1, 2010, and Petitioner did not file

2   an appeal.  Pursuant to Rule 8.308 of the California Rules of Court, Petitioner had sixty (60) days in

3   which to file a notice of appeal.  Because Petitioner did not file a notice of appeal, his direct review

4   concluded on April 2, 2010, when the sixty-day period for filing a notice of appeal expired.  Thus,

5   Petitioner had one year until April 2, 2011, in which to file his federal petition for writ of habeas

6   corpus.  See Patterson v. Stewart, 251 F.3d 1243, 1245 (9th Cir.2001). In this case, Petitioner

7   delayed filing the instant petition until February 26, 2012, over ten months beyond the due date.

8   Absent any applicable tolling, the instant petition is barred by the statute of limitations.

9   C.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

10         Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application

11   for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

12   pending shall not be counted toward" the one year limitation period.  28 U.S.C. § 2244(d)(2). In

13   Carey v. Saffold, the Supreme Court held the statute of limitations is tolled where a petitioner is

14   properly pursuing post-conviction relief, and the period is tolled during the intervals between one

15   state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the

16   state court system. 536 U.S. 214, 215 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir.

17   1999), cert. denied, 120 S.Ct. 1846 (2000).  Nevertheless, state petitions will only toll the one-year

18   statute of limitations under § 2244(d)(2) if the state court explicitly states that the post-conviction

19   petition was timely or was filed within a reasonable time under state law. Pace v. DiGuglielmo, 544

20   U.S. 408 (2005); Evans v. Chavis, 546 U.S. 189 (2006). Claims denied as untimely or determined by

21   the federal courts to have been untimely in state court will not satisfy the requirements for statutory

22   tolling. Id.

23         As stated above, the statute of limitations ran from April 3, 2010, to April 2, 2011.  Petitioner

24   did not file any state habeas petitions within the limitations period.  He did file several state habeas

25   petitions but they were filed after the limitations period had already expired.  They could not operate

26   to revive the limitations period.  Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir.2001).  Accordingly,

27   Petitioner is not entitled to statutory tolling and the federal petition remains untimely.  28 U.S.C.

28   § 2244(d).

D.  Equitable Tolling

The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Irwin v. Department of Veteran Affairs, 498 U.S. 89, 96 (1990); Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998), citing Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996), cert denied, 522 U.S. 814 (1997).  Petitioner bears the burden of alleging facts that would give rise to tolling. Pace, 544 U.S. at 418; Smith v. Duncan, 297 F.3d 809 (9th Cir.2002); Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir.1993).  In his opposition, Petitioner claims he should be entitled to equitable tolling because: 1) He was denied access to the law library to research his state habeas petition from March of 2010 to August of 2010 because he was housed in administrative segregation, and also from August of 2010 to December of 2010 because he did not have a current case in court; and 2) He suffers from mental incompetence and mental illness which rendered him incapable of performing many daily activities.  Respondent argues these circumstances were not so extraordinary as to entitle Petitioner to equitable tolling.  The Court will address each claim for tolling in turn.

1.  Access to Law Library and Legal Research

Petitioner claims that he was housed in administrative segregation from March of 2010 to August of 2010.  He claims he was unable to prepare any legal pleadings during this time because he was denied access to legal research.  Also, from the period of August 2010 to December 2010, he claims he was denied access because he did not have a current case in court.

Respondent contends these circumstances are insufficient to justify equitable tolling, and this Court agrees.  Petitioner offers no specifics on when he was denied access to the law library or legal research or how any of these instances interfered with his ability to timely file his federal petition. See Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir.2008) ("an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence"); Miller v. Marr, 141 F.3d 976, 978 (10th Cir.1998) (conclusory allegations are insufficient).  Additionally, there exists a law library paging system that an inmate, who is otherwise unable to access the law library, may utilize to secure legal materials. See California Department of Corrections and Rehabilitation

1   Department Operations Manual § 101120.10.  While Petitioner may have been frustrated in his

2   attempts to attend the law library because of his placement, he fails to show he was thwarted in his

3   attempts to secure legal materials through the paging system or any other means, or even that he

4   attempted to use the paging system.

5        Moreover, Petitioner fails to sustain his burden of showing his own diligence and that the

6   hardship that was caused by lack of access was an extraordinary circumstance that caused him to file

7   his petition late.  See Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1012-14 (9th Cir.2009), cert.

8   denied, 130 S.Ct. 244 (2009).  As pointed out by Respondent, by Petitioner's own account, he was

9   only unable to access legal research material from March of 2010 to December of 2010.  The

10  limitations period did not expire until April 2, 2011.  Petitioner had several months of unimpeded

11  access in which to timely comply with the limitations period.  Therefore, equitable tolling is

12  unwarranted.  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir.2003) (petitioner must show that

13  extraordinary circumstances were the actual cause of his untimeliness); Lott v. Mueller, 304 F.3d

14  918, 922-23 (9th Cir.2002) (court must examine whether, notwithstanding extraordinary

15  circumstances, the petitioner could have filed a timely petition); see also Pace v. DiGuglielmo, 544

16  U.S. at 410-11, 419 (a petitioner must demonstrate he exercised diligence at all times prior to filing

17  the federal petition to qualify for equitable tolling).

18       Furthermore, the Court notes that Petitioner filed an administrative appeal on October 29,

19  2010, which was six months into the limitations period. (See Resp't's Mot. Dismiss, Ex. B.)

20  Petitioner was requesting double the normal library access time allotted.  (Id.)  Petitioner's request for

21  double time was denied.  (Id.)  Significantly, the appeal noted that Petitioner had been given priority

22  access but he refused to leave his cell on the appointed date.  (Id.)  In light of this record, it is

23  apparent Petitioner was not denied access to the law library during the relevant time period.

24       2.  Mental Incompetence

25       The Ninth Circuit has held mental incompetence to be an extraordinary circumstance beyond

26  a prisoner's control. See Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir.2003). Therefore, where "a

27  habeas petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing

28  deadline, his delay was caused by an extraordinary circumstance beyond [his] control." Id. (internal

1   quotation marks omitted).  Under Ninth Circuit law, a petitioner must satisfy a two-part test to be

2   eligible for equitable tolling for mental impairment.  Bills v. Clark, 628 F.3d 1092, 1099 (9th

3   Cir.2010). First, a petitioner must show his mental impairment was an "extraordinary circumstance"

4   beyond his control, by demonstrating the impairment was so severe that either (a) petitioner was

5   unable rationally or factually to personally understand the need to timely file, or (b) petitioner's

6   mental state rendered him unable personally to prepare a habeas petition and effectuate its filing. Id.

7   Second, the petitioner must show diligence in pursuing the claims to the extent he could understand

8   them, but that the mental impairment made it impossible to meet the filing deadline under the totality

9   of the circumstances, including reasonably available access to assistance.  Id.

10          In this case, Petitioner provides no specifics on his alleged mental illness.  He does not

11  identify the illness and the circumstances surrounding the illness.  Further, he states that he suffered

12  his mental illness "at times."  See Opposition at 2.  He provides no further details, such as when the

13  illness occurred, its duration, whether it was during the relevant time period, and how the illness

14  prevented him from timely filing his petition.  As noted by Respondent, to be entitled to equitable

15  tolling, a petitioner must demonstrate that the extraordinary circumstance rendered him incapable

16  during the entire time period, not just "at times" during the limitations period.  Pace, 544 U.S. at

17  410-11, 419; Laws, 351 F.3d at 932; Bills, 628 F.3d at 1100 ("The petitioner therefore always

18  remains accountable for diligence in pursuing his or her rights").  Moreover, despite the alleged

19  ongoing mental illness, Petitioner still managed to file three state habeas petitions and the instant

20  federal petition.  With the exception of June 2010 when Petitioner states he was referred to the

21  Department of Mental Health, he does not claim that his mental illness was any different during the

22  time he filed his state and federal petitions.  While it is true Petitioner spent a couple of days at the

23  Correctional Treatment Center in June of 1010 and was placed on suicide watch, Petitioner admitted

24  that he went on suicide watch because he and his cellmate were "conflicting" and Petitioner needed

25  to get away from his cellmate. (See Resp't's Mot. Dismiss, Ex. A. at 83, 329, 352, 353, 359.)  Since

26  Petitioner's ongoing mental illness did not prevent him from filing his various petitions, Petitioner

27  fails to show the mental illness rendered him unable to timely file the instant federal petition. Gaston

28  v. Palmer, 417 F.3d 1030, 1034 (9th Cir.2005), *reh'g granted, opinion modified*, 447 F.3d 1165 (9th

1   Cir.2006), *cert. denied*, 127 S.Ct. 979 (2007); Howell v. Roe, 2003 WL 403353 (N.D. Cal.2003)

2   (equitable tolling denied where petitioner had been well enough to file state habeas and other

3   actions).  Therefore, he fails to sustain his burden of demonstrating an extraordinary circumstance.

4        Respondent has submitted Petitioner's complete mental health record for the relevant time

5   from 2010 through 2012. (See Resp't's Mot. Dismiss, Ex. A.)  A review of these records reveals no

6   mental disorder so severe as to render Petitioner incapable of filing his federal habeas petition.

7   Significantly, in a psychological assessment conducted on December 21, 2010, which was in the

8   midst of the limitations period, Petitioner demonstrated "clear goal-directed speech and happy

9   mood" and appeared to be "exaggerating and/or feigning symptoms for secondary gain." (Id. at 483.)

10  During a review on June 23, 2011, the psychologist found "[n]o clear symptoms of a major Axis I

11  disorder." (Id. at 484.)  His placement in Mental Health Services was in response to his diagnosis of

12  an antisocial personality as reflected by his history of violent outbursts, highly assaultive behaviors,

13  and manipulative behaviors. (Id. at 6, 8, 30, 39, 49, 50, 83, 102, 150, 244, 252, 254, 326, 375, 466,

14  539.)  Yet, the mental health records reflect that from 2010 through 2012 Petitioner was consistently

15  found to be stable, intelligible, oriented, cooperative, high-functioning, alert, articulate, and having a

16  clear cognition and sustained concentration. (Id. at 4, 14, 39, 41, 42, 53, 101, 102, 105, 109, 112,

17  128, 129, 133, 136, 144, 146, 148, 151, 153, 157, 159, 161, 165, 167, 169, 172, 175, 178, 179, 184,

18  189, 194, 196, 208, 210, 212, 214, 216, 220, 225, 242, 254, 257, 278, 297, 306, 315, 324, 335, 359,

19  363, 389, 521, 522-525.)  Moreover, Petitioner's alleged mental disorder appeared in large part to be

20  contrived, as noted in almost every psychological evaluation: 3/3/10 ("The patient is currently

21  stable")  (Id. at 297); 4/14/10 ("The patient-inmate did a good job maintaining his activities of daily

22  living")  (Id. at 315); 5/5/10 ("The patient is doing a good job managing his mental health

23  symptoms")  (Id. at 324); 7/5/10 ("no mental health issues reported")  (Id. at 372); 7/22/10 (inmate

24  "reports no mental health concerns")  (Id. at 370);  9/8/11 ("Seems to be patronizing us with his

25  knowledge of emotion labels") (Id. at 485); 9/21/11 ("Continued impression of manipulative &

26  deceptive behavior") (Id. at 485); 11/2/11 ("He has no serious Axis I disorder") (Id. at 485); 12/8/11

27  ("Fabrication [and] exaggeration of somatic and psychiatric symptoms for secondary gain") (Id. at

28  486); 12/23/11 ("[inmate] presents without any visible mood and/or thought disturbances. He

1  appears to be a high functioning individual, who is articulate and intelligent") (Id. at 172); 12/29/11

2  ("Fabrication and exaggeration of MH symptoms for secondary gains") (Id. at 55); 1/26/12

3  (psychiatrist "doubt[s] credibility of [inmate's] symptoms")  (Id. at 159); 1/27/12 ("[Inmate] shows

4  no signs of acute anxiety, depression, mania, paranoia, or psychosis. No delusions or hallucinations

5  expressed") (Id. at 156); (2/29/12 ("Fabrication and exaggeration of MH symptoms for secondary

6  gains") (Id. at 37); 4/5/12 ("there seems little reason for him to be included in MHSDS") (Id. at 112);

7  4/16/12 ("No mental health issues at this time") (Id. at 108); 4/26/12 ("[Inmate] has demonstrated on

8  several occasions that he has the capacity to control his irritability, his anger, and his behavior, but

9  he sometimes chooses not to restrain himself") (Id. at 102); 5/3/12 ("as [inmate] has demonstrated

10  his capacity to control his behavior when he wants to, and there is no Axis I diagnosis, we are

11  considering discharge from MHSDS") (Id. at 100).

12         Petitioner also reported auditory hallucinations, but he admitted they did not cause him

13  distress. (Id. at 3, 51, 56, 301, 324, 328, 332, 337, 341, 362.)  Indeed, reviewing psychiatrists

14  determined that they were "highly suspect" and likely a form of "self-talk." (Id. at 34.)

15         Additionally, the Court refers again to the administrative appeal filed by Petitioner on

16  October 29, 2010. (See Resp't's Mot. Dismiss, Ex. B.)  In his appeal, Petitioner stated he needed

17  double the amount of time normally allotted because he was attempting to start an appeal on his

18  criminal case. Id. In light of this record, it is clear Petitioner understood the need to timely file his

19  petition.

20         In summary, the Court has reviewed the mental health records and finds no evidence of a

21  mental health disorder so severe that Petitioner was unable rationally or factually to personally

22  understand the need to timely file, or that Petitioner's mental state rendered him unable personally to

23  prepare a habeas petition and effectuate its filing.  Rather, the records indicate Petitioner's relevant

24  mental functions were well within normal limits.  The records reflect Petitioner suffered from an

25  antisocial personality disorder, however, the disorder did not constitute an extraordinary

26  circumstance beyond his control with rendered him unable to understand the need to timely file his

27  petition, or to personally prepare his petition and effectuate its filing.  Therefore, Petitioner's

28  argument for equitable tolling should be denied.

1      3.  Need for Evidentiary Hearing

2          Petitioner argues his claim for equitable tolling should be further explored in an evidentiary

3  hearing.  The Court is not persuaded.  There is more than sufficient evidence in the form of

4  Petitioner's mental health records from which to make a determination.  See Roberts v. Marshall,

5  627 F.3d 768, 772–73 (9th Cir.2010) ("Where the record is amply developed, and where it indicates

6  that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his

7  habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the

8  factual record, notwithstanding a petitioner's allegations of mental incompetence." (citation

9  omitted)); Laws v. Lamarque, 351 F.3d 919, 924 ("Of course, a petitioner's statement, even if sworn,

10  need not convince a court that equitable tolling is justified should countervailing evidence be

11  introduced.").

12                              **RECOMMENDATION**

13          Accordingly, the Court HEREBY RECOMMENDS that the motion to dismiss be

14  GRANTED and the habeas corpus petition be DISMISSED with prejudice for Petitioner's failure to

15  comply with 28 U.S.C. § 2244(d)'s one year limitation period.

16          This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United

17  States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B).  Within

18  thirty (30) days after date of service of this Findings and Recommendation, any party may file

19  written objections with the Court and serve a copy on all parties.  Such a document should be

20  captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the

21  Objections shall be served and filed within fourteen (14) days after date of service of the Objections.

22  The Finding and Recommendation will then be submitted to the District Court for review of the

23  Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure

24  to file objections within the specified time may waive the right to appeal the Order of the District

25  Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

26

27          IT IS SO ORDERED.

28      Dated:   **August 7, 2012**              **/s/ Gary S. Austin**

1                                         UNITED STATES MAGISTRATE JUDGE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28